**RECORD NOS. 14-4192(L); 14-4193**

In The

# United States Court Of Appeals

## For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee,*

**v.**

**THADDEUS VIDAL PERALTA, a/k/a Ted, a/k/a Ted the Fed; AARON ANTHONY LUMPKIN,**

*Defendants – Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK

———————

**BRIEF OF APPELLANTS**

———————

**Nicholas D. Renninger**
**KOZAK, DAVIS & RENNINGER, PC**
**355 Crawford Street**
**Suite 700**
**Portsmouth, VA  23704**
**(757) 222-2224**

**Melinda R. Glaubke**
**SLIPOW ROBUSTO & KELLAM, PC**
**2476 Nimmo Parkway**
**Suite 121**
**Virginia Beach, VA  23434**
**(757) 427-5094**

*Counsel for Appellant*
  *Thaddeus Vidal Peralta*

*Counsel for Appellant*
  *Aaron Anthony Lumpkin*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ..................................................................................iv

JOINT BRIEF OF APPELLANTS ........................................................................1

SUBJECT MATTER AND APPELLATE JURISDICTION....................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW (PERALTA) ...............1

STATEMENT OF ISSUES PRESENTED FOR REVIEW (LUMPKIN)...............2

STATEMENT OF THE CASE AND FACTS (PERALTA)....................................2

STATEMENT OF THE CASE AND FACTS (LUMPKIN) ..................................5

SUMMARY OF ARGUMENT (PERALTA) .........................................................7

SUMMARY OF ARGUMENT (LUMPKIN) .......................................................10

ARGUMENT (PERALTA) ...................................................................................11

       ISSUE 1    Whether a reasonable jury or rational trier of fact could
                    have found the evidence sufficient to support a verdict of
                    guilt beyond a reasonable doubt on all counts for which
                    Peralta was found guilty............................................................11

          i.     Standard of Review.................................................................11

          ii.    Discussion ..............................................................................12

       ISSUE 2    Whether the District Court committed reversible error in
                    denying Peralta's objections in denying Peralta's Motion
                    to exclude evidence and allowing improper and
                    inadmissible evidence obtained from a traffic stop in
                    North Carolina in 2008 to be presented to the jury .................22

i

      i.    Standard of Review ...................................................22

      ii.   Discussion ................................................................23

ISSUE 3    Whether the District Court committed reversible error in denying Defendant's Motion for a Judgment of Acquittal .......27

      i.    Standard of Review ...................................................27

      ii.   Discussion ................................................................28

ISSUE 4    Whether the District Court committed reversible error in attributing the drug weights and role in the offense and possession of dangerous weapon enhancements to the Defendant for sentencing purposes when the District Court overruled Peralta's objections to the Presentence Report and Addendums ...............................................29

      i.    Standard of Review ...................................................29

      ii.   Discussion ................................................................29

          a.    The district court erred in attributing any drug weight to Peralta at the sentencing .................................29

          b.    The district court erred in assessing a three-level enhancement for role in the offense under U.S.S.G. § 3B1.1(b) ......................................................40

          c.    The district court erred in assessing a two-level enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1) ...........................42

ARGUMENT (LUMPKIN) .......................................................45

   1.    STANDARD OF REVIEW ...............................................45

   2.    DISCUSSION ...............................................................45

a.     The District Court improperly estimated the amount of drug weight attributed to Lumpkin at sentencing ....................45

b.     The trial court erred in assessing a three-level enhancement for role in the offense under Guideline § 3B1.1(b) ....................................................................................49

c.     The trial court erred in assessing a two-level enhancement under Guideline § 3C1.1 for obstruction ...........51

CONCLUSION ..............................................................................................52

STATEMENT REGARDING ORAL ARGUMENT ............................................53

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE:**

## CASES:

*Apprendi v. New Jersey*,
  530 U.S. 466 (2000)................................................................29, 45

*Gall v. United States*,
  552 U.S. 38 (2007)................................................................43, 45

*Glasser v. United States*,
  315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942) ........................................11

*Hunter v. Earthgrains Co. Bakery*,
  281 F.3d 144 (4th Cir. 2002) ........................................................23

*Jackson v. Virginia*,
  443 U.S. 307 (1970)................................................................27

*United States v. Bartley*,
  230 F.3d 667 (4th Cir. 2000) ................................................41, 49

*United States v. Bolden*,
  325 F.3d 471 (4th Cir. 2003) ........................................................31

*United States v. Booker*,
  543 U.S. 220 (2005)................................................................29, 43, 45

*United States v. Burgos*,
  94 F.3d 849 (4th Cir. 1996) (en banc), *cert. denied*,
  519 U.S. 1151, 117 S. Ct. 1087, 137 L. Ed. 2d 221 (1997) .........................11

*United States v. Cameron*,
  573 F.3d 179 (4th Cir. 2009) ................................................41, 49

*United States v. Cisneros-Gutierrez*,
  517 F.3d 751 (5th Cir. 2008) ........................................................43

iv

*United States v. Collazo*,
    732 F.2d 1200 (4th Cir. 1984) ........................................................26

*United States v. Fisher*,
    912 F.2d 728 (4th Cir. 1990) ........................................................15

*United States v. Hamlin*,
    319 F.3d 666 (4th Cir. 2003) ........................................................14

*United States v. Hughes*,
    401 F.3d 540 (4th Cir. 2005) ........................................................29

*United States v. Mackey*,
    265 F.3d 457 (6th Cir. 2001), *cert. denied*, 534 U.S. 1097 (2002) ..............15

*United States v. Moye*,
    454 F.3d 390 (4th Cir. 2006) ........................................................22

*United States v. Ramirez*,
    79 F.3d 298 (2d Cir. 1996) ........................................................15

*United States v. ReBrook*,
    58 F.3d 961 (4th Cir. 1995) ........................................................22

*United States v. Russell*,
    971 F.2d 1098 (4th Cir. 1992), *cert. denied*,
    506 U.S. 1066, 113 S. Ct. 1013, 122 L. Ed. 2d 161 (1993) ........................22

*United States v. Sayles*,
    296 F.3d 219 (4th Cir. 2002) ...................................................41, 49

*United States v. Singh*,
    54 F.3d 1182 (4th Cir. 1995) ........................................................29

*United States v. Smith*,
    62 F.3d 641 (4th Cir. 1995) ........................................................51

*United States v. Spruill*,
    119 F.3d 221 (4th Cir. 1997), *cert. denied*, 522 U.S. 1006 (1997) ..............11

*United States v. Thornton,*
554 F.3d 443 (4th Cir. 2009) ......................................................45

*United States v. Tresvant,*
677 F.2d 1018 (4th Cir. 1982) ....................................................28

*United States v. Ward,*
171 F.3d 188 (4th Cir. 1999) ...............................................25, 26

*United States v. Wilson,*
107 F.3d 774 (10th Cir. 1997) ....................................................15

*United States v. Young,*
609 F.3d 348 (4th Cir. 2010) ...............................................30, 46

*United States v. Zapata-Lara,*
615 F.3d 388 (5th Cir. 2010) ......................................................43

## STATUES:

18 U.S.C. § 3553(a) .........................................................................29

21 U.S.C. § 841(a)(1)................................................................*passim*

21 U.S.C. § 841(b)(1)(A) ...................................................1, 3, 5, 12

21 U.S.C. § 841(b)(1)(B) ...................................................1, 3, 6, 12

21 U.S.C. § 846 .................................................................1, 3, 5, 12

28 U.S.C. § 1291 ...............................................................................1

## SENTENCING GUIDELINES:

U.S.S.G. § 1B1.3(a)(1)(B) ......................................................30, 46

U.S.S.G. § 2D1.1.............................................................................43

U.S.S.G. § 2D1.1(a)(5) ............................................................30, 46

U.S.S.G. § 2D1.1(b)(1) ............................................................42, 43

vi

U.S.S.G. § 2D1.1(c)(2) ...................................................................30

U.S.S.G. § 2D1.1(c)(4) ...................................................................46

U.S.S.G. § 3B1.1(b) .................................................................40, 49

U.S.S.G. § 3C1.1 ............................................................................51

U.S.S.G. § B1.1 .......................................................................41, 49

## **RULES:**

Fed. R. App. P. 3(a) ........................................................................1

Fed. R. App. P. 4(b) ........................................................................1

Fed. R. Crim. P. 29 .....................................................................3, 27

Fed. R. Evid. 403 ..........................................................................24

Fed. R. Evid. 404(a)(2) .................................................................27

Fed. R. Evid. 404(b) .....................................................................23

Fed. R. Evid. 405 ..........................................................................27

## JOINT BRIEF OF APPELLANTS

NOW COME the Appellants, Thaddeus Vidal Peralta ("Peralta") and Aaron Anthony Lumpkin ("Lumpkin"), by counsel, and for their Joint Brief, state as follows:

## SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from criminal convictions rendered in the United States District Court for the Eastern District of Virginia, Norfolk Division, in the criminal case styled *United States v. Thaddeus Vidal Peralta and Aaron Anthony Lumpkin*, No. 2:12cr00192. The trial court had jurisdiction pursuant to the following federal statutes, under which Peralta and Lumpkin were indicted: 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and (b)(1)(B); and 21 U.S.C. § 846. Following sentencing proceedings, Judgment Orders reflecting the sentences were filed on March 5, 2014 (J.A. 1587-1598). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Pursuant to Rules 3(a) and 4(b) of the Federal Rules of Appellate Procedure, Peralta and Lumpkin both timely noted their appeals to this Court, Peralta on March 6, 2014 and Lumpkin on March 7, 2014 (J.A. 1599-1601).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW (PERALTA)

### ISSUE 1

Whether a reasonable jury or rational trier of fact could have found the evidence sufficient to support a verdict of guilt beyond a reasonable doubt on all counts for which Peralta was found guilty.

1

**ISSUE 2**

Whether the District Court committed reversible error in denying Peralta's objections in denying Peralta's Motion to exclude evidence and allowing improper and inadmissible evidence obtained from a traffic stop in North Carolina in 2008 to be presented to the jury.

**ISSUE 3**

Whether the District Court erred in denying Defendant's Motion for a Judgment of Acquittal.

**ISSUE 4**

Whether the District Court erred in attributing the drug weights and role in the offense and possession of dangerous weapon enhancements to the Defendant for sentencing purposes when the District Court overruled Peralta's objections to the Presentence Report and Addendums.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW (LUMPKIN)

The District Court erred in denying Lumpkin's Position Papers with Respect to drug weights and in attributing certain enhancements to Lumpkin in the Pre-Sentence Report.

## STATEMENT OF THE CASE AND FACTS (PERALTA)

On July 25, 2013, a Grand Jury for the United States District Court for the Eastern District of Virginia sitting in the Norfolk, Virginia Division returned a Superseding Indictment ("Indictment") accusing Peralta and Lumpkin of participating in a conspiracy to distribute and possess with the intent to distribute methamphetamine. Both Peralta and Lumpkin were specifically charged as follows: Count 1, from in or about 2005, and continuing thereafter until on or

about July 17, 2013,  conspire to distribute and possess with the intent to distribute

fifty (50) grams or more of methamphetamine, commonly known as "ice" in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and to distribute and possess

with intent to distribute five-hundred (500) grams or more of a mixture containing

methamphetamine, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), all in

violation of 21 U.S.C. § 846; Count 2, on or about November 3, 2011, possess with

the intent to distribute approximately eight (8) ounces (approximately 226 grams)

of a mixture containing  methamphetamine in violation of 21 U.S.C. §§ 841(a)(1)

and (b)(1)(B)  (J.A. 22-32).

Upon entering pleas of not guilty to all charges, Peralta and Lumpkin were

tried by a jury in a joint jury trial beginning October 1, 2013.  (J.A. 12).

The Government presented evidence in the form of testimony of alleged co-

conspirators and other witnesses who testified as to Peralta's alleged involvement

in the conspiracy. Peralta presented evidence during cross-examination of the

witnesses and in his case-in-chief. At both the conclusion of the United States'

evidence and at the conclusion of all the evidence, both Peralta and Lumpkin made

motions for judgment of acquittal pursuant to Rule 29 of the Federal Rules of

Criminal Procedure. (J.A. 1082-1085 and 1222-1223).  At the conclusion of the

trial, by Special Jury Verdict Form, the jury found Peralta guilty of Counts 1 and 2

(J.A. 1375).  By Special Jury Verdict Form, the jury found Peralta guilty of Count

1 and found that the total amount of methamphetamine which Peralta conspired to distribute and possess with intent to distribute was 50 grams or more of methamphetamine, commonly known as "ice" or 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine; and guilty of Count 2, and found that the total amount of methamphetamine that the defendant possessed with intent to distribute was less than 50 grams of a mixture and substance containing a detectable amount of methamphetamine.  (J.A. 1375-1376).

With respect to Peralta, a Presentence Report (PSR) was filed December 20, 2013 (J.A. 1602).  A PSR with Additional Addendum was prepared and filed January 24, 2014 (J.A. 1627). A PSR with Additional Addendum was filed February 21, 2014 (J.A. 1654). A PSR with Additional Addendum was filed March 11, 2014 (J.A. 1684). On January 22, 2014, Peralta filed his Motion for Downward Departure and Memorandum in Support (J.A. 1387). On January 29, 2014, Peralta filed his Defendant's Position on Sentencing Factors stating several objections to the guidelines calculations contained in the PSR.  (J.A. 1440).   Peralta filed his Addendum to Position with Respect to Sentencing Factors on February 24, 2014 (J.A. 1517).  Peralta's sentencing hearing was held on March 3, 2014.  The District Court heard argument and then entered its Judgment in a Criminal Case on March 5, 2014, affirming all the jury's findings of guilt and sentenced Peralta to:  a term of Two Hundred and Sixty-Two (262)

months on Count 1 and a term of 240 months on Count 2, to be served concurrently

(J.A. 1587).

On March 6, 2014, Peralta timely noted his appeal to this Court.  (J.A.

1599).  Lumpkin timely noted his appeal to this Court on March 7, 2013.  (J.A.

1601).  The appeals were consolidated and this Joint Brief follows.

The facts relevant to the issues on this appeal can be found in the joint

appendix, which is cited herein as "(J.A.)."

## STATEMENT OF THE CASE AND FACTS (LUMPKIN)

On July 25, 2013, a Grand Jury for the United States District Court for the

Eastern District of Virginia sitting in the Norfolk, Virginia Division returned a

Superseding Indictment ("Indictment") accusing Peralta and Lumpkin of

participating in a conspiracy to distribute and possess with the intent to distribute

methamphetamine.  Both Peralta and Lumpkin were specifically charged as

follows:  Count 1, from in or about 2005, and continuing thereafter until on or

about July 17, 2013,  conspire to distribute and possess with the intent to distribute

fifty (50) grams or more of methamphetamine, commonly known as "ice" in

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and to distribute and possess

with intent to distribute five-hundred (500) grams or more of a mixture containing

methamphetamine, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), all in

violation of 21 U.S.C. § 846; Count 2, on or about November 3, 2011, possess with

the intent to distribute approximately eight (8) ounces (approximately 226 grams) of a mixture containing  methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)  (J.A. 22-32).

Upon entering pleas of not guilty to all charges, Peralta and Lumpkin were tried by a jury in a joint jury trial beginning October 1, 2013.  (J.A. 12).  At both the conclusion of the United States' evidence and at the conclusion of all the evidence, both Peralta and Lumpkin made motions for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (J.A. 1082-1085 and 1222-1223).  At the conclusion of the trial, by Special Jury Verdict Form, the jury found Peralta guilty of Counts 1 and 2 (J.A. 1375).  By Special Jury Verdict Form, the jury found Lumpkin guilty of  Count 1 and found that the total amount of methamphetamine which Lumpkin conspired to distribute and possess with intent to distribute was 5 grams or more of methamphetamine, commonly known as "ice" or 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine; and guilty of Count 2, and found that the total amount of methamphetamine that the defendant possessed with intent to distribute was less than 50 grams of a mixture and substance containing a detectable amount of methamphetamine.  (J.A. 1378-1380).

With respect to Lumpkin, a Presentence Report and Additional Addendums ("PSR") was prepared (J.A. 1714).  On January 25, 2014, Lumpkin filed his

Defendant's Position with Respect to Sentencing Factors stating several objections to the guidelines calculations contained in the PSR. (J.A. 1391). Lumpkin filed his Defendant's Addendum to Position with Respect to Sentencing on February 24, 2014 (J.A. 1508). Lumpkin's sentencing hearing was held on March 3, 2014. The District Court heard argument and Lumpkin's allocution and then entered its Judgment in a Criminal Case on March 5, 2014, affirming all the jury's findings of guilt and sentenced Lumpkin to: a term of One Hundred Eighty (180) months on each of Counts 1 and 2, to be served concurrently (J.A. 1593).

On March 6, 2014, Peralta timely noted his appeal to this Court. (J.A. 1599). Lumpkin timely noted his appeal to this Court on March 7, 2013. (J.A. 1601). The appeals were consolidated and this Joint Brief follows.

The facts relevant to the issues on this appeal can be found in the joint appendix, which is cited herein as "(J.A.)."

## SUMMARY OF ARGUMENT (PERALTA)

**ISSUE 1**

The evidence presented at trial was insufficient to support the jury's conclusion that Peralta conspired to and did possess narcotics with the intent to distribute. The evidence establishes only that incredible witnesses who were co-defendants or co-conspirators gave conflicting testimony about Peralta's alleged involvement in the conspiracy and possession of narcotics.

The record is devoid of evidence of even one of the facts that would support an inference that Peralta conspired to possess the narcotics or even further, possessed them for distribution. Peralta was never found to be in possession of narcotics by a law enforcement officer, nor did he sell to an undercover informant or an officer. Peralta never had prior narcotics convictions. No physical evidence was seized from Peralta or analyzed by an expert. The only evidence presented at trial was insufficient in that it was unbelievable, untrustworthy, unreliable and insisted of inconsistent statements of individuals who had notice and incentive to fabricate their testimony.

**ISSUE 2**

The District Court committed reversible error in denying Peralta's objections in denying Peralta's Motion to exclude evidence and allowing improper and inadmissible evidence obtained from a traffic stop in North Carolina in 2008 to be presented to the jury. Highly prejudicial evidence of a firearm and drug related paraphernalia was allowed to be presented to the jury despite the fact that the evidence showed that Peralta never possessed these items and that instead other occupants of his vehicle either had these items in their dominion and control or the items were not in any parties' dominion and control and therefore not attributable to Peralta. No items were ever recovered from Peralta personally, except for the conflicting evidence that a sum of money may have been recovered from his person. By allowing the witnesses to testify to the recovery of a handgun, a plastic

bottle, a needle, and other items, any potential relevance of the evidence that the United States introduced over Peralta's objection was outweighed by unfair prejudice, and was barred by the rules barring inadmissible evidence of other crimes, wrongs or bad acts.

**ISSUE 3**

The District Court committed reversible error in denying Peralta's Motion for a Judgment of Acquittal as the evidence presented is remarkably weak and no rational finder of fact could conclude Peralta is guilty beyond a reasonable doubt as there was conflicting and inconsistent statements made by the witnesses and no physical evidence was every recovered directly from Peralta.

**ISSUE 4**

The District Court committed reversible error in attributing the drug weights and role in the offense and possession of dangerous weapon enhancements to the Defendant for sentencing purposes when the District Court overruled Peralta's objections to the Presentence Report and Addendums.  The District Court erred in attributing Peralta with a total drug weight of 4498.8125 Kilograms of methamphetamine and assessing a corresponding 34 base offense level. The District Court should not have attributed Peralta with any weight at all because the evidence was insufficient and in conflict as to weight, but at the most a total drug weight of at least 200 grams but less than 350 grams, with a corresponding base

offense level of 30 would have been appropriate. Moreover, Peralta was not a manager or supervisor of a criminal activity that involved five or more participants as that term is defined in the Guidelines. There was evidence at trial that Peralta and his mother were so poor they could not even afford rent and had to move from one location to the next on a frequent basis. Government Witness Stegall even corroborates Peralta's contention when she stated that they were not part of a conspiracy, they were "just around the people in question." Finally, Peralta should not have received an enhancement for possession of a dangerous weapon. There were two other individuals in the vehicle with Peralta when this traffic stop occurred when the weapon was recovered. According to the police officers who testified at trial, the weapon was recovered from underneath the hood area of the vehicle, was not in Peralta's possession and there was no evidence that Peralta even knew of its existence.

## SUMMARY OF ARGUMENT (LUMPKIN)

The District Court erred when it denied Lumpkin's objections to the Guidelines calculations as found in the PSR. Specifically, Lumpkin should not have been attributed with an Offense Level of 32 based on a total weight of 866.442437 grams of a mixture containing methamphetamine and 52.5 grams of methamphetamine ("ice") He should not have received a three level enhancement for role in the offense or a two level enhancement for obstruction.

10

## ARGUMENT (PERALTA)

**ISSUE 1**

Whether a reasonable jury or rational trier of fact could have found the evidence sufficient to support a verdict of guilt beyond a reasonable doubt on all counts for which Peralta was found guilty.

### i.  Standard of Review

When this Court reviews a sufficiency of the evidence argument, it must only sustain a verdict where "there is substantial evidence, taking the view most favorable to the Government, to support it." *United States v. Spruill*, 119 F.3d 221, 227 (4th Cir. 1997), *cert. denied*, 522 U.S. 1006 (1997). The standard of review for sufficiency of the evidence is that the jury's verdict must be upheld on appeal if there is substantial evidence in the record to support it. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L. Ed. 680 (1942). In determining whether the evidence in the record is substantial, the court of appeals views the evidence in the light most favorable to the government and inquires whether there is evidence that a "reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc), *cert. denied*, 519 U.S. 1151, 117 S. Ct. 1087, 137 L. Ed. 2d 221 (1997).

### ii.    Discussion

No reasonable jury or fact finder could have found the evidence sufficient to support a verdict of guilt beyond a reasonable doubt on all counts for which Peralta was found guilty.

As set forth above, the jury found Peralta guilty on Counts One and Two of the Superseding Indictment.

Peralta was indicted in the superseding indictment under Count One where it was alleged that from in or about 2005, and continuing thereafter until on or about July 17, 2013, he did unlawfully, knowingly and intentionally conspire to distribute and possess with the intent to distribute fifty (50) grams or more of methamphetamine, commonly known as "ice" in violation of 21 U.S.C. § 846 and to distribute and possess with intent to distribute five-hundred (500) grams or more of a mixture containing methamphetamine, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); and in Count 2 it was alleged that Peralta, on or about November 3, 2011, did possess with the intent to distribute approximately eight (8) ounces (approximately 226 grams) of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)  (J.A. 22-32).

The essential elements of the offense contained in Count One that the Government had to prove beyond a reasonable doubt are that (1) two or more persons, including the defendant, directly or indirectly, reached an agreement to

distribute and possess with intent to distribute 50 grams or more of methamphetamine, commonly known as "ice", a schedule II narcotic controlled substance, or distribute and possess with intent to distribute five hundred grams or more of a mixture and substance containing a detectable amount of methamphetamine, a schedule II narcotic controlled substance; that (2) the defendant knew of the unlawful purpose of the agreement, and (3) that the defendant joined in the agreement willfully, that is with the intent to further its unlawful purpose.

As to Count Two, the essential elements of the offense that the Government had to prove beyond a reasonable doubt in order to convict the defendant were that the Defendant possessed the controlled substance as described in Count 1, that the defendant knew that the substance was a controlled substance and that he intended to distribute the controlled substance.

The Court stated "I think there is evidence from which a rational trier of fact could conclude defendants are guilty as to each of these counts, and so I'm going to leave that decision to the jury and deny the motions, both motions" (J.A. 1226). However, the Court also stated that "there is evidence from which a rational trier of fact could question some of the other evidence that they have heard…." (J.A. 1226). It is the contention of the Defendant that the evidence presented is

remarkably weak and that no rational finder of fact could conclude Defendant is guilty beyond a reasonable doubt.

Viewing the evidence in the light most favorable to the Government, and drawing all reasonable inferences in its favor, the evidence establishes only that incredible witnesses who were co-defendants or co-conspirators gave conflicting testimony about Peralta's involvement.

The record in this case is even more remarkable for what it lacks. The record is devoid of evidence of even one of the following facts that would support an inference that Peralta possessed the narcotics or even further, possessed them for distribution.

To begin, there is no evidence that the areas where Peralta was alleged to have possessed or conspired to possess with intent to distribute was known to be areas where drugs are distributed. In contrast, in *United States v. Hamlin*, 319 F.3d 666, 669 (4th Cir. 2003), the police stopped the defendant in an area known for drug activity after observing what appeared to be a drug transaction. In the instant case, not only was Peralta never found to be in possession of narcotics by a law enforcement officer, the one time he was stopped by a police officer during the 2008 traffic stop in South Carolina referenced *infra*, he was never convicted of possession of narcotics, and instead the only narcotics found in the vehicle Peralta

was driving was found to be in the dominion and control of a passenger (J.A. 239-240).

In this case there was no evidence before the court that Peralta had prior narcotics convictions, as there was in *United States v. Fisher*, 912 F.2d 728, 731 (4th Cir. 1990), in which the jury heard testimony that defendant had prior narcotics convictions.

Further, in this case, there was no evidence that Peralta had sold narcotics from any law enforcement officer. For example, there was no evidence of undercover buys by an officer or an informant, as there was in *United States v. Mackey*, 265 F.3d 457, 459 (6th Cir. 2001), *cert. denied*, 534 U.S. 1097 (2002), and *United States v. Wilson*, 107 F.3d 774, 777 (10th Cir. 1997). Similarly, in this case, there was no evidence before the court that the police had ever conducted surveillance of Peralta at home or elsewhere, unlike *United States v. Ramirez*, 79 F.3d 298, 300 (2d Cir. 1996). To the contrary, of the law enforcement witnesses to testify, only the officers involved in a 2008 traffic stop had any contact with Peralta, and in that incident Peralta was never convicted and the evidence established that the occupants in the vehicle with Peralta actually had possession or at least dominion and control over the evidence seized from the vehicle (J.A. 201-236).

The law enforcement officers or scientists or chemists who testified, not

including the two police officers involved in the 2008 traffic stop were D. W. Todd

(J.A. 502); Steven Demchuck (J.A. 531); Ryan Boone (J.A. 630); Kendall Brown

(J.A. 642); Lisa Jackson (J.A. 659); Amy Crouch (J.A. 683); Juan Figuero (J.A.

801); Michael Ramey (J.A. 1045); and George Fox (J.A. 1057). Not one of these

witnesses testified to any personal involvement with Peralta, observations of him,

surveillance of him, seizure of any drugs or other evidence from him, or any

analysis of any narcotics directly attributable to him. Rather, their testimony was a

smoke screen to confuse and numb the jury into believing that there must be some

validity to the inherently untrustworthy, unreliable and contradictory evidence of

the supposed "eye witnesses who were little more than criminals and defendants

desperate to receive a sentence reduction or some other form of leniency.

What evidence the Government did present to the jury in the form of more

direct evidence was inherently unreliable, incredible and contradictory. For

example, Count Two of the Indictment alleges that on November 3, 2011,

Lumpkin and Peralta possessed 8 ounces of methamphetamine.  Jane Erazo

testified as a Government Witness that one small package (one ounce) was picked

up by Peralta (not 8 ounces) (J.A. 1012).  Jason Warren testified that the small

black bags contained 1 ounce (J.A. 905).  Warren also testified that he and

Lumpkin shipped two packages containing 4 ounces each to Erazo and Peralta picked it up from her (J.A. 859-860).

Roberta Stegall testified that a trip she made to Virginia with Jason Warren and Bryson Lane was Warren's and Lane's idea and Warren orchestrated the whole event (J.A. 747-748). The testimony about where the methamphetamine came from and how it was transported to Virginia was contradictory between Stegall and Warren (J.A. 749, 788, 790-791).

Even one of Warren's co-conspirator's, Roy Smith, when asked about Warren's reputation for truthfulness and honesty, testified that "You can't believe a whole lot that comes from him." (J.A. 1143). Smith had known and dealt with Warren for years and the conclusion Smith came to was that his reputation for veracity is lacking.

Some of the more profound examples of why the evidence is simply not sufficient comes from Government witnesses Ronald Linwood Reid and Roberta Stegall.

Reid began his testimony on cross-examination by admitting that he "can't be 100 percent sure" of the drug weights he testified to (J.A. 597). Reid then went on to testify and was caught in a blatant lie and then was exposed as to his true motivations to fabricate his testimony against Peralta (J.A. 603-606). Reid was confronted with Peralta's Exhibit number 12, which was correspondence or a

"kite" that he was exchanging with another federal inmate. The correspondence clearly states that Reid was looking to get a "cut" or sentence reduction in exchange for his testimony against Peralta and even referred to getting his "cut from the Flip, bitch" and then went on to say that he "went to grand jury on the flip only" (Defendant Peralta's Exhibit 12). Reid admitted on cross examination that information is a commodity in the federal system used for exchange to get sentence reductions (J.A. 603-606).

There is absolutely no reason to believe Reid's testimony, or any of the other federal inmate witnesses who testified against Peralta during the trial because they were all hoping to receive a reduction or "cut" off their sentences in exchange for fabricating Peralta's involvement in the conspiracy: Reid had been sentenced to 181 months (J.A. 557); Roy Smith was facing sentence at the time of the trial of ten years to life (J.A. 60); Justin Wheeler was sentenced to 360 months (J.A. 254); Steven Bishop was sentenced to 215 months (J.A. 280); Jonathan Jones was sentenced to 121 months (J.A. 317); Harold Ritchey was sentenced to 120 months (J.A. 336); Alan Toledo was sentenced to 240 months (J.A. 416); Tricia Murphey was sentenced to 10 years (J.A. 453); Jeremy Taylor was sentenced to 120 months and received a reduction to his sentence (J.A. 473); Roberta Diann Stegall was awaiting sentencing at the time of the trial (J.A. 722), but admitted that she was testifying in the hopes to receive a sentence reduction (J.A. 763); Jason Warren

18

was sentenced to 60 months (J.A. 820); Jane Erazo was involved and testified she gave packages to Peralta and Lumpkin; therefore, she was hoping to avoid prosecution by her cooperation (J.A. 1007). Jane Erazo also testified that she had been previously convicted of a crime involving dishonesty (J.A. 1036).

Clearly, all these witnesses had significant incentive and motive to fabricate allegations against Peralta and their testimony is inherently untrustworthy.

Roberta Stegall admitted she could not recall how many times Lumpkin gave Peralta methamphetamine and she did not know the quantity (J.A. 768). She also testified that Peralta was living with his mother in Florida during the first part of November 2011 (J.A. 771), which contradicts Warren's testimony and the Government's allegations that Peralta was in the Eastern District of Virginia possessing narcotics as alleged in Count Two of the indictment. Roberta Stegall also admitted that she was mistaken when she testified to a specific weight of methamphetamine on direct examination (J.A. 773) and went on to admit that her "memory isn't the greatest" with respect to the specific drug weights (J.A. 773-774). She also testified that she cannot tell the drug weights simply by looking at the alleged methamphetamine, that the only way she could know for certain the weight would be to weigh the methamphetamine and that she never weighed any of the narcotics (J.A. 775).

19

Roberta Stegall also testified that she sent Peralta a letter stating "You know as well as I do we were no part of a conspiracy" (J.A. 778). Stegall then said that "[i]t wasn't a conspiracy." (*Id.*).

It also noteworthy that there is no evidence of transactions via "Greendot Money Pak Rush Cards" in Peralta's name, nor was there any documentary evidence presented as to Peralta's usage of this medium. Government witness Matthew Heinz is the custodian of records for Bankcorp Bank (J.A. 810). Through this witness, the Government introduced Exhibits 500, 501 and 502, which were statements of accounts generated when a user would go online and register for an account (J.A. 816). Heinz admitted that a person could log on and use information that was false and the company's security systems would not necessarily catch the issue so long as the social security numbers and names matched (J.A. 817).

Roy Smith testified that Peralta would "put [money] on a Green Dot Money Pak card" and transfer money for narcotics transactions (J.A. 135-137); however, there was no documentary evidence of these transactions through Mr. Heinz, nor was it alleged that Peralta used false information to mask the transactions; therefore, this evidence is insufficient and incredible.

There was also conflict in the testimony between Smith and Warren as to whether Smith's wife was involved in any drug transactions and whether Smith's entire family, including his wife would visit Peralta's residence (J.A. 1135-1136);

Warren and Stegall also contradicted one another as to the hotel they supposedly went to during one of their trips to Virginia from Florida (J.A. 769, 968).

Warren also testified that it was common practice to hid methamphetamine within a vehicle where the other occupants do not know where it is located to help ensure that law enforcement will not be able to solicit the information from the occupant who knows nothing of its whereabouts (J.A. 967-968). This type of subterfuge is common and is also a reasonable hypothesis as to Peralta's lack of knowledge of the handgun in the vehicle that was recovered during the traffic stop in 2008.

Warren also testified that when he would pick up bags of methamphetamine from Jane Erazo's residence he would not look inside the bags to verify the contents, so there is no way of knowing whether the contents were truly narcotics or if so, what the weight actually was (J.A. 971). Warren also admitted that he would not weigh out methamphetamine that was distributed to Tisoy, a co-conspirator (J.A. 969).

It is of note that there is no expert testimony as to whether the so-called methamphetamine that was being distributed by these individuals was actually an illegal substance.

In short, the evidence simply does not support the trier of fact's finding that Peralta conspired to, or did possess with intent to distribute any narcotics.

21

Although this Court must look at the evidence in the light most favorable to the government and will not will disturb a rational fact finder's conclusion when there is substantial evidence to support it, this case presents one of those rare occasions where no rational fact finder could find Peralta guilty, beyond a reasonable doubt, of the offenses charged in Counts One and Two. Therefore, this Court must vacate Peralta's convictions on these counts as it is reversible error not to do so.

**ISSUE 2**

Whether the District Court committed reversible error in denying Peralta's objections in denying Peralta's Motion to exclude evidence and allowing improper and inadmissible evidence obtained from a traffic stop in North Carolina in 2008 to be presented to the jury.

### i.      Standard of Review

The standard of review for evidentiary rulings is abuse of discretion. *United States v. ReBrook*, 58 F.3d 961, 967 (4th Cir. 1995). This Court reviews the district court's evidentiary ruling with substantial deference and will not disturb that decision absent a clear abuse of discretion. *United States v. Russell*, 971 F.2d 1098, 1104 (4th Cir. 1992), *cert. denied*, 506 U.S. 1066, 113 S. Ct. 1013, 122 L. Ed. 2d 161 (1993). "By definition, a court abuses its discretion when it makes an error of law." *United States v. Moye*, 454 F.3d 390, 398 (4th Cir. 2006) (en banc) (citation and internal quotation marks omitted). If the district court makes an error of law in deciding an evidentiary question, that error is "by definition an abuse of

22

discretion." *See Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002).

### ii. Discussion

On September 26, 2013, Peralta filed a "Defendant's Response to Government's Notice to Introduce 404(b) Evidence and Motion in *Limine* to Exclude Evidence" (J.A. 48) (labeled as document number 128 (J.A. 10)), whereby Peralta moved to exclude improper character evidence and/or prejudicial evidence relating to a 2008 traffic stop in South Carolina where a handgun was recovered from under the hood of a vehicle the Defendant was driving with two other occupants in the vehicle and additionally, where a plastic water bottle with plastic tubing, money, digital scales, a needle, and a blue towel was recovered from inside the vehicle under a seat where one of the passengers was sitting. On October 1, 2013, after the commencement of the trial, upon hearing oral arguments on the motions, the District Court DENIED the motion (J.A. 12) (labeled as document number 142).

With respect to evidence concerning the gun, importantly, there were no counts in the indictment involving firearms. Given the nature of the counts pending against Peralta at trial, it was highly prejudicial for the jury to hear testimony regarding a handgun that was recovered from a vehicle in which two other people

were present with Peralta and where Peralta was never charged with any offense related to the handgun by the state law enforcement officers who effected the stop.

Even if it was relevant, all the evidence concerning items that were found in the vehicle during the 2008 traffic stop was highly prejudicial and any probative value it might have was substantially outweighed by unfair prejudice.

Rule 403 of the Federal Rules of Evidence, titled, "Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons," states as follows:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
> Fed. R. Evid. 403

In this case, the evidence showed that Peralta was the driver of a vehicle with two other occupants. (J.A. 213). From within the vehicle the following items were recovered: a plastic bottle with tubing, a black bag containing a digital scale, a blue stretch towel band, and a needle, and also from within the vehicle, acetone and Drano were recovered. (J.A. 213-219). From under the hood of the vehicle, a black bag beside the battery was recovered and in the bag a pistol was discovered. (J.A. 220).

The two occupants in the vehicle with Peralta were Timothy Phillips and Krisha Ronell Spears. (J.A. 214). On direct examination of Officer Vereen, the

24

Officer testified that a certain sum of money was recovered from the person of Mr. Phillips, and from Peralta. (J.A. 221). However, on cross-examination, Officer Vereen testified that he did not recover anything from Peralta. (J.A. 224).

Further, the evidence showed that Mr. Phillips was in the front passenger's seat and Ms. Spears was in the back seat. (J.A. 224-225, 239). The bottle was recovered from where Ms. Spears was sitting. (J.A. 240). The black bag containing a digital scale, a blue stretch towel band, and a needle was recovered from under the rear seat where Ms. Spears was sitting. (J.A. 225, 239-240).

The plastic bottle with tubing attached was found to contain a substance that was analyzed and tested and determined to be methamphetamine, a Schedule II drug. (J.A. 248).

Absolutely no items were recovered from Peralta personally, other than the contradicted evidence of a certain sum of money. It was contradicted because Officer Vereen testified once on direct that he recovered money from Peralta and then on cross-examination, he stated that nothing was recovered from Peralta.

Additionally, Peralta was never convicted of any crime relating to this traffic stop. (J.A. 226).

While the 4 Circuit has held that the "admission of handguns into evidence in drug cases has been consistently upheld as relevant to the issues raised by such cases." *United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999), citing to *United*

*States v. Collazo*, 732 F.2d 1200 (4th Cir. 1984), the Court went on to say that

"There is no per se rule in this circuit requiring district courts to admit gun

evidence in drug conspiracies." *See Ward*, 171 F.3d at 195. While acknowledging

that there is "a strong preference for the admission of all relevant evidence", the

4th Circuit leaves it to the discretion of the district court to determine if the

"potential relevance of the gun evidence is outweighed by unfair prejudice or is

barred by any other rule of evidence." *Id*.

The recovery of a handgun from a vehicle where two other people were

present and Peralta was never charged, has little, if any, probative value as to

whether Peralta was specifically engaged in the crimes for which he stood indicted

in the District Court.

Additionally, the potential relevance of the evidence that the United States

introduced over Peralta's objection was outweighed by unfair prejudice, and was

barred by the rules barring inadmissible evidence of other crimes, wrongs or bad

acts.

The Government's evidence regarding the 2008 traffic stop was essentially

prejudicial evidence that had the effect of being presented to the jury as evidence

of the character of the Defendant.

Pursuant to the Federal Rules of Evidence, the Government may not

introduce specific instances of misconduct by the Defendant, and it may not

introduce any evidence of the character of the victim unless such evidence is "pertinent" to the case. Fed. R. Evid. 404(a)(2) (requiring evidence against defendant only be presented to rebut character evidence offered by the defendant or offer evidence showing the defendant has the same character trait that defendant attempts to offer regarding a victim); Fed. R. Evid. 405 (limiting evidence of specific conduct to cases in which character is "an essential element of a charge, claim, or defense").

In the instant case, the character of Peralta was wholly irrelevant to the charges or claims against Peralta and Peralta had not yet offered any evidence to rebut.

Accordingly, the District Court should have sustained Peralta's objection and granted the Motion to exclude all the evidence pertaining to the items seized during the 2008 traffic stop and it erred when it did not do so.

**ISSUE 3**

Whether the District Court committed reversible error in denying Defendant's Motion for a Judgment of Acquittal.

### i.    Standard of Review

The standard for determining a Rule 29 motion is established in *Jackson v. Virginia*, 443 U.S. 307 (1970). In that case, the Supreme Court stated that the question to be asked is whether "any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt." *Id.* at 307. In

order to prevail, the defendant must show that even when viewed in a light most favorable to the government, that no rational juror could have found the defendant guilty beyond a reasonable doubt on his evidence. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

### ii. Discussion

The trial court erred in denying Defendant's Motion for a Judgment of Acquittal.

The Court stated "I think there is evidence from which a rational trier of fact could conclude defendants are guilty as to each of these counts, and so I'm going to leave that decision to the jury and deny the motions, both motions" (J.A. 1226). However, the Court also stated that "there is evidence from which a rational trier of fact could question some of the other evidence that they have heard…." (J.A. 1226). It is the contention of the Defendant that the evidence presented is remarkably weak and that no rational finder of fact could conclude Defendant is guilty beyond a reasonable doubt.

As Peralta's discussion and argument, Peralta re-states and sets forth the argument as presented for Issue 1 and repeats and re-states the same argument herein.

The District Court erred in denying Defendant's Motion for a Judgment of Acquittal.

**ISSUE 4**

Whether the District Court committed reversible error in attributing the drug weights and role in the offense and possession of dangerous weapon enhancements to the Defendant for sentencing purposes when the District Court overruled Peralta's objections to the Presentence Report and Addendums.

### i.    Standard of Review

In the wake of *United States v. Booker*, 543 U.S. 220, "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines" and then "shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). In assessing challenges to a sentencing court's application of the Guidelines, this Court reviews factual determinations for clear error and legal issues de novo. *United States v. Singh*, 54 F.3d 1182, 1190 (4th Cir. 1995).

### ii.    Discussion

#### a.    The district court erred in attributing any drug weight to Peralta at the sentencing.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that drug quantities which increase the statutory maximum are elements of the offense, which must be charged in the indictment and found by the jury by proof beyond a reasonable doubt. However, this Court has held that a jury finding on a special verdict only establishes the statutory minimum and maximum

sentence, and "placed no constraint on the district court's authority to find facts relevant to sentencing." *United States v. Young*, 609 F.3d 348, 357 (4th Cir. 2010). Indeed, in making "factual findings, the district court may consider acquitted conduct, so long as the court determines that the conduct was established by a preponderance of the evidence." *Id*.

In the instant case, the District Court erred in attributing Peralta with a total drug weight of 4498.8125 Kilograms of methamphetamine and assessing a corresponding 34 base offense level under U.S.S.G. 2D1.1(a)(5) and 2D1.1(c)(2). (J.A. 1529A*, et. seq.*). The District Court should not have attributed Peralta with any weight at all, but at the most a total drug weight of at least 200 grams but less than 350 grams, with a corresponding base offense level of 30.

The Additional Addendum of February 21, 2014 which the Court considered at the sentencing hearing on March 3, 2014, was re-filed on March 11, 2014 noting the Court's changes to 4498.8125 Kilograms, with a base level of 34, an enhancement for Possession of a Dangerous Weapon, and an enhancement for Role in the Offense resulted in an adjusted offense level of 39, and recommended a guideline range of 262 – 327 months (J.A. 1705-1710).

United States Sentencing Guidelines § 1B1.3(a)(1)(B) states that "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" can be attributed to the defendant. It is axiomatic,

however, that the District Court must make particularized findings as to the jointly undertaken activity. *See United States v. Bolden*, 325 F.3d 471 (4th Cir. 2003).

The Court erred in attributing any drug weight to Peralta based upon the testimony of the Government's witnesses as the witnesses were unreliable, unable to testify to specific amounts when cross-examined and often cited either poor memory or the fact that they did not actually weigh the product as the reason why they could not state with certainty the exact quantity and weight. Moreover, the witnesses' credibility should be considered in the light that most of the Government witnesses had every incentive to testify to what the Government wanted them to say due to the significant amount of incarceration at risk in their cases.

Paragraph 14 attributes Mr. Peralta with 14.175 grams of a mixture and substance containing methamphetamine (J.A. 1702). This estimate is based on the testimony of Government witness Roy Wilson Smith ("Smith"), that Alan Toledo arrived at Smith's residence and purchased ¼ ounce from Peralta who was staying with Smith at Smith's residence in Virginia Beach "in 2006." According to Smith, Mr. Peralta transported ½ ounce to Virginia. U.S. Probation used this information to calculate the weight (1/2 ounce = 14.175 grams) (J.A. 1605).

The defense cannot state emphatically enough that Roy Smith's testimony is unreliable with respect to specific weights. Numerous times throughout Smith's

testimony and in response to questions about specific drug weights and dates he would make statements such as, "I believe," (J.A. 33), "basically," "as far as I know," "I don't know" (J.A. 102), and "I cannot say a positive number" (J.A. 102). Moreover, specifically on cross-examination, Smith admitted that he had possibly testified to contradictory amounts in his testimony before the Grand Jury, citing an inability to recall specific weights and dates (J.A. 111, 176).

Because this testimony is unreliable and there are inconsistencies in Smith's testimony, the amount in this paragraph should not be attributed to Peralta.

Paragraph 15 attributes Mr. Peralta with 2,041.2 grams of methamphetamine (J.A. 1658). This estimate seems to be based on the testimony of Government witness Steven Bishop (J.A. 283-292).

Bishop testified, however, that he bought 4 ounces from Daniel Rice by himself on one occasion and simply drove in Peralta's Ford Explorer. As for the estimate that he and Peralta eventually increased to 8 ounces on six occasions, Bishop later corrected that statement and testified, "maybe it was 5 or 6 times" (J.A. 291). The more conservative estimate should be used, if at all.

Additionally, Bishop's testimony is unreliable to the degree it was contradicted by Smith's testimony. Bishop testified that on certain occasions, Bishop, Peralta, Smith and Smith's wife, Becky were customers (J.A. 291). Smith denied that his wife, Becky Smith was a user or involved in drugs at all, or even

that his family members were ever present when distributions were occurring (J.A. 1135-1136). Harold Ritchey also testified that he lived with Roy Smith and his wife, Becky and that Roy Smith would be involved with methamphetamine while he was living with his wife (J.A. 358-359). Further, Bishop testified that he wanted to receive a sentence reduction and that is why he was testifying (J.A. 301). This is further evidence of the inherent unreliability of Bishop's testimony and Roy Smith's testimony and there is no credible support for this information; therefore, the amount in this paragraph should not be attributed to Peralta.

Paragraph 16 attributes Mr. Peralta with 269.325 grams of methamphetamine (J.A. 1658). This quantity is derived from testimony from Government witnesses, Harold Ritchey (Ritchey), Alan Toledo, (Toledo), Smith and Bishop and is also derived from information pertaining to several unnamed, unindicted coconspirators. With respect to Smith and Bishop, Mr. Peralta repeats and re-alleges the concerns with respect to both Bishop's and Smith's inherent unreliability and inconsistencies in their testimonies as witnesses as stated above.

It was in regard to this specific timeframe (2007) that Smith stated once that he "cannot say a positive number" (J.A. 102).

Harold Ritchey admitted that it was "only a guess" that there were transactions between and among Peralta, Bishop and Toledo, and that he never

observed any transactions (J.A. 390). This is in contradiction to other testimony
and also weakens the evidence regarding this paragraph.

Alan Toledo was interviewed in October 2009 by the Government regarding
"methamphetamine distributing activities and the activities of others" where he
gave detailed information about the conspiracy; however, Peralta's name never
once was mentioned by Toledo during this debriefing when he was giving so
called, "truthful" information to the Government (J.A. 443-447).  According to
Toledo's testimony at trial, he last saw Mr. Peralta in 2009; therefore, it is wholly
incredible to believe that he would have simply "forgotten" to mention Peralta's
name in the interview if Mr. Peralta was indeed as instrumental in the conspiracy
as the Government witnesses suggest. Moreover, Toledo gave inconsistent
information with respect to who would travel from Florida to Virginia.  In the
interview, he stated, "Bishop and Gamez" would travel between Virginia and
Florida.  At trial, he testified that Mr. Peralta and Bishop would travel between the
two states.  Also, Toledo testified that "Ted (Mr. Peralta) never really told him who
he was selling to," but, "to his knowledge" Mr. Peralta was selling to certain
customers.  Once again, this is conjecture without credible corroborative support
(J.A. 440-447).

With respect to the statement in paragraph 16 where it indicates, "In 2007,
Peralta and Harold Ritchey traveled from Florida to Virginia with an ounce of

methamphetamine", Ritchey testified to the Grand Jury on December 5, 2012, that

he was arrested on December 16, 2005, returned to the custody of the Virginia

Department of Corrections and was released from Virginia DOC on June 19, 2008.

At trial, Ritchey testified that he was in jail until approximately 2008 and saw Mr.

Peralta approximately 90 days after being released (J.A. 342).  This amount of 1

ounce, therefore, should not be attributed to Peralta.

Moreover, Ritchey's testimony about Peralta was often based on what Roy

Smith told him (J.A. 354) and throughout the trial he would guess as to weight.

(*See* for example J.A. 360), when asked about seeing Peralta using

methamphetamine; "And do you recall the quantity, sir? A. It was probably less

than an eight ball, which is three and a half ounces."

Ritchey's testimony also contained some inconsistencies and discrepancies

to what he testified to at the Grand Jury proceeding in 2012 in relation to other

transactions and times not pertaining to this paragraph, but which call into question

the veracity of his testimony (J.A. 404-407). Also, at one point when asked

whether Peralta was selling to Roy Smith, he said, "I guess" (J.A. 359).

Overall, this information is largely conjecture, and there is no credible,

corroborative support for this information; therefore, the amount in this paragraph

should not be attributed to Peralta.

35

Paragraph 17 attributes Mr. Peralta with 1,105.65 grams of methamphetamine (J.A. 1658). The information contained in this paragraph is completely unsubstantiated by anything other than Smith's testimony. As stated above, Smith is an unreliable witness with respect to specific drug weights.

Paragraph 20 attributes Peralta with 56.7 grams of Methamphetamine (J.A. 1658) and was later changed to 2 ounces (J.A. 1702). This estimate is based on the allegation that Peralta purchased this amount from an unindicted co-conspirator near the end of 2008 based upon the testimony of Smith. As stated above, Smith is an unreliable witness with respect to specific drug weights.

Paragraph 22 attributes 28.35 grams of methamphetamine to Mr. Peralta (J.A. 1659). This weight is derived from the allegation that Peralta traveled to Virginia from Florida with an unindicted coconspirator and Robin Thompson. The information in this paragraph is completely unsubstantiated and without support from any testimony at trial. The amount in this paragraph should not be attributed to Peralta.

Paragraph 23 attributes 56.7 grams of methamphetamine to Peralta (J.A. 1659). This information is derived from Ritchey's testimony at trial and this information is inherently unreliable given the inconsistencies in his testimony as articulated herein.

Paragraph 24 attributes 418.1625 grams relies upon the testimony of Roy Smith in large part (J.A. 1659). For the reasons stated herein, his testimony is incredible.

Paragraph 25 attributes 105 grams of methamphetamine to Peralta (J.A. 1659). The information is completely unsubstantiated and does not reference any testimony at trial. The amount in this paragraph should not be attributed to Mr. Peralta.

Paragraph 26 attributes 141.75 grams of methamphetamine to Mr. Peralta (J.A. 1659). The information is completely unsubstantiated. This information in large part is derived from Smith's testimony, who is inherently unreliable. The amount in this paragraph should not be attributed to Mr. Peralta.

Paragraph 27 attributes 10 grams of methamphetamine to Mr. Peralta (J.A. 1659). This information seems to be derived in large part from Ritchey's testimony; however, Ritchey and other Government witnesses testified that it was around August 2010 that Ritchey met Danyelle Carothers and that Ritchey and Roberta Diann Stegall would make trips together as Peralta had been "cut out" for various reasons (J.A. 365-366). Furthermore, Ritchey testified earlier Peralta and Arca had "cut out" Ritchey (J.A. 352). Either way, it does not stand to reason that Ritchey and Peralta would travel to Polk County, Florida to purchase

methamphetamine together; this is contradictory and makes no sense and is incredible.

With respect to Stegall, she admitted that she stated in her letter to Mr. Peralta that she and Mr. Peralta were "no part of any conspiracy, or [sic] did we talk about, plan-get together or apart from one another on any of what went down. But we did know on [sic] some things and were around the people in question." Stegall, Chino and Warren all testified to conducting transactions without Mr. Peralta's knowledge during the August-September 2010 timeframe. Stegall also admitted on cross-examination that she did not weigh out the drugs and admittedly could not recall specific weights.

Paragraph 29 attributes 503.2125 grams of methamphetamine to Peralta (J.A. 1660). The information in this paragraph was derived from Government witness Smith. He testified that Mr. Peralta introduced him to Aaron Lumpkin sometime after May, 2011. Mr. Smith stated that he conducted two transactions with Mr. Peralta at a third parties' residence and Mr. Lumpkin was present. Smith said these were the only two times he had ever seen Mr. Lumpkin, but yet he went on to testify that Mr. Peralta and Smith began to use Lumpkin as their source for methamphetamine (J.A. 151-157). For these reasons, and the reasons stated earlier as to Smith's unreliability, this amount should not be attributed to Peralta.

Paragraph 31 attributes 524.475 grams of methamphetamine to Peralta (J.A. 1661). The majority of this information was derived from Government witness Warren. Specifically, the first part of the paragraph involves the allegations contained in Count 2 of the indictment alleging possession with intent to distribute 8 ounces of methamphetamine. Jane Erazo testified as a Government Witness that one small package (one ounce) was picked up by Peralta (not 8 ounces) (J.A. 1012). Jason Warren testified that the small black bags contained 1 ounce (J.A. 905). Warren also testified that he and Lumpkin shipped two packages containing 4 ounces each to Erazo and Peralta picked it up from her (J.A. 859-860).

This is contradictory to what is stated in paragraph 31 of the PSR. The jury obviously did not believe this testimony because of the weight they found in their special verdict form. They found the amount was less than 50 grams of methamphetamine.

Roberta Stegall testified that a trip she made to Virginia with Jason Warren and Bryson Lane was Warren's and Lane's idea and Warren orchestrated the whole event (J.A. 747-748). The testimony about where the methamphetamine came from and how it was transported to Virginia was contradictory between Stegall and Warren (J.A. 749, 788, 790-791). The amount in this paragraph should not be attributed to Peralta.

39

Paragraph 32 attributes 11 grams of methamphetamine to Mr. Peralta. The information in this paragraph is completely unsubstantiated. Smith's testimony is unreliable for the reasons stated above. The information in this paragraph is completely unsubstantiated with no credible, corroborative support. The amount in this paragraph should not be attributed to Mr. Peralta.

Generally, with respect to all the drugs weights attributed to Peralta, it must be noted that there was no expert testimony as to the nature or purity of the substance, whether it was the substance alleged, and certainly no physical evidence was ever seized and presented at trial.

The District Court erred in attributing these drug weights to the Defendant for sentencing purposes.

> **b.    The district court erred in assessing a three-level enhancement for role in the offense under U.S.S.G. § 3B1.1(b).**

Peralta was not a manager or supervisor of a criminal activity that involved five or more participants as that term is defined in the Guidelines.  Under U.S.S.G. § 3B1.1(b), a District Court may assess a three-level sentencing adjustment if the court makes specific findings that the defendant was a manager or supervisor and the criminal activity involved five or more participants or that was otherwise extensive.  Seven factors must be considered in deciding whether a role in the offense enhancement should be applied: [1] the exercise of decision making

authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others. *United States v. Cameron*, 573 F.3d 179, 184 (4th Cir. 2009) citing U.S.S.G. B1.1 n. 4 and *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002). A defendant should only be given an aggravating role enhancement if he "controlled the activities of other participants." *United States v. Bartley*, 230 F.3d 667, 673 (4th Cir. 2000). The Court must ascertain Peralta's role in the offense.

While many witnesses testified of Peralta's involvement in the conspiracy, Peralta did not supervise or manage distribution or launder money to purchase any substance. Key conspirators such as Smith, Bishop and Warren, among others, were the primary managers and directors. Additionally, the evidence established that Mr. Peralta was typically at his mother's residence (as evinced by Roberta Stegall's testimony; J.A. 724, *et. seq.*), and, if anything, Peralta was more of a drug user than a supervisor or manager of the conspiracy.

Mr. Peralta's mother, Aurora Peralta, testified that Mr. Peralta was at her home in Florida during many of the key time periods testified to by Government witnesses that Mr. Peralta was in Virginia or in other parts of Florida conducting

41

transactions.  According to Mrs. Peralta's testimony, and even corroborated to a large degree by many of the Government's witnesses, Mr. Peralta was a very involved son who lived with and helped his mother, he cared for his dying father until he passed away and worked odd jobs to contribute to the well-being of the household.  Moreover, the family had to relocate from residence to residence when they could not afford the rent (J.A. 1087, *et. seq.*).  There is no evidence that Mr. Peralta was living "the high life" or extravagantly living off illicit gain from the conspiracy.

Furthermore, Mr. Peralta's limited role in the conspiracy was evinced in Diann Stegall's testimony where she admitted in her letter to Mr. Peralta that she and Mr. Peralta were "no part of any conspiracy, or [sic] did we talk about, plan-get together or apart from one another on any of what went down. But we did know on [sic] some things and were around the people in question" (J.A. 778-779). This summary best states Peralta's involvement in the offense, rather than that Mr. Peralta was a supervisor or a manager. The District Court erred in applying this enhancement.

> **c.    The district court erred in assessing a two-level enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1).**

Additionally, Mr. Peralta, received a two (2) level increase for possession of a dangerous weapon pursuant to U.S.S.G. 2D1.1(b)(1). Sentencing Guideline §

42

2D1.1(b)(1) provides a two-level enhancement of defendant's offense level "[i]f a dangerous weapon (including a firearm) was possessed". U.S.S.G. § 2D1.1(b)(1). Commentary to § 2D1.1 instructs: "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense". U.S.S.G. § 2D1.1 cmt. n.11(A). This enhancement applies where defendant personally possessed the weapon or where a co-conspirator possessed the weapon during the conspiracy and that possession was reasonably foreseeable to defendant. *See United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010).

Although post-*Booker*, the Sentencing Guidelines are advisory only, and a properly preserved objection to an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the Guideline-sentencing range for use in deciding on the sentence to impose. *Gall v. United States*, 552 U.S. 38, 51 (2007). In that respect, for issues preserved in district court, as in this instance, its application of the Guidelines is reviewed de novo; its factual findings, only for clear error. *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). This firearm is related to a traffic stop that occurred in 2008 in South Carolina. In this case, the evidence showed that Peralta was the driver of a vehicle with two other occupants. (J.A. 213). From under the hood of the vehicle, a black bag beside the battery was recovered and in the bag a pistol was discovered. (J.A. 220).

43

On cross-examination, Officer Vereen testified that he did not recover anything from Peralta. (J.A. 224). Additionally, Peralta was never convicted of any crime relating to this traffic stop. (J.A. 226).

There were two other individuals in the vehicle with Mr. Peralta when this traffic stop occurred. According to the police officers who testified at trial, the weapon was recovered from underneath the hood area of the vehicle, was not in Peralta's possession and there was no evidence that Peralta even knew of its existence.

Further, Government witness Warren testified that it was common practice to hide methamphetamine within a vehicle where the other occupants do not know where it is located to help ensure that law enforcement will not be able to solicit the information from the occupant who knows nothing of its whereabouts (J.A. 967-968). This type of subterfuge is common and is also a reasonable hypothesis as to Peralta's lack of knowledge of the handgun in the vehicle that was recovered during the traffic stop in 2008 in that one of the occupants of the vehicle hid the weapon under the hood and did not reveal its location or existence to any of the other occupants. The District Court erred in applying this enhancement.

# ARGUMENT (LUMPKIN)

The District Court committed reversible error in denying Lumpkin's objections and attributing him with an offense Level of 32 and applying enhancements for his role in the offense and obstruction.

## 1.     STANDARD OF REVIEW

Following *United States v. Booker*, 543 U.S. 220 (2005), this Court should review a sentence only for reasonableness.  *See Gall v. United States*, 552 U.S. 38 (2007).  "When considering a sentence's reasonableness, [this Court] reviews the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Thornton*, 554 F.3d 443, 445 (4th Cir. 2009) (internal quotation omitted).

## 2.     DISCUSSION

The District Court erred in several instances when it overruled Lumpkin's objections to the Presentence Report and Addendums.

### a.     The District Court improperly estimated the amount of drug weight attributed to Lumpkin at sentencing.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that drug quantities which increase the statutory maximum are elements of the offense, which must be charged in the indictment and found by the jury by proof beyond a reasonable doubt.  However, this Court has held that a jury finding on a special verdict only establishes the statutory minimum and maximum

sentence, and "placed no constraint on the district court's authority to find facts relevant to sentencing." *United States v. Young*, 609 F.3d 348, 357 (4th Cir. 2010). Indeed, in making "factual findings, the district court may consider acquitted conduct, so long as the court determines that the conduct was established by a preponderance of the evidence." *Id*.

In our case, the District Court erred in attributing Lumpkin with a total drug weight of 866.442437 grams of a mixture containing methamphetamine and 52.5 grams of methamphetamine ("ice"), and assessing a corresponding 32 base offense level under Guidelines 2D1.1(a)(5) and 2D1.1(c)(4). The District Court should have attributed Lumpkin with a total drug weight of 8 ½ ounces or 240.970665 grams with a corresponding base offense level of 28.

U.S.S.G. § 1B1.3(a)(1)(B) states that "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" can be attributed to the defendant.

**i.**          Lumpkin should not have been attributed with 12.25 ounces or 347.2875 grams in ¶14 of the PSR (J.A. 1719). The information regarding 7 ½ ounces of this amount came from Government Witness Roy Smith. He testified that Peralta introduced him to Lumpkin (J.A. 147) sometime after May, 2011 (J.A. 181). Smith conducted two transactions with Peralta at a third parties' residence (J.A. 184) and Lumpkin was present (J.A. 148-149). Smith said these were the

only two times he saw Lumpkin and he did not witness any further transactions between Lumpkin and Peralta (J.A. 171). He never saw Lumpkin handle any drugs (J.A. 150). The other amounts in this paragraph came from Government Witness Warren who is unreliable. At the most, Lumpkin should have been attributed with 7 ½ ounces.

**ii.**        Lumpkin should not have been attributed with 8.859375 grams in ¶15 of the PSR (J.A. 1719). These amounts are total conjecture and guess work. And Warren, who is an unreliable witness, was the only source of this information.

**iii.**        Lumpkin should not have been attributed with 17 ounces or 481.95 grams in ¶17 of the PSR (J.A. 1720). Count 2 of the Indictment alleges that on November 3, 2011, Lumpkin and Peralta possessed 8 ounces of methamphetamine. Jane Erazo testified as a Government Witness that one small package (one ounce) was picked up by Peralta (not 8 ounces) (J.A. 1012). Warren testified that the small black bags contained 1 ounce (J.A. 905). Warren also testified that he and Lumpkin shipped two packages containing 4 ounces each to Erazo and Peralta picked it up from her (J.A. 859-860). This is contradictory to what is stated in the PSR. The PSR states that after mailing ½ lb of methamphetamine to his mother in Virginia, Lumkin flew to Virginia, retrieved it and gave it to Peralta to distribute (J.A. 1720). Therefore, Lumpkin should not have been attributed with eight ounces. At the most he should be attributed with one ounce.

Roberta Stegall testified that the trip she made to Virginia with Warren and Bryson Lane was Warren's and Lane's idea and Warren orchestrated the whole event (J.A. 747-748). The testimony about where the methamphetamine came from and how it was transported to Virginia was contradictory between Stegall and Warren (J.A. 749, 788, 790-791). Lumpkin should not have been attributed with the remaining drugs in ¶17 of the PSR (J.A. 1720).

**iv.**    Lumpkin should not have been attributed with 52.5 grams of ice in ¶18 of the PSR (J.A. 1720). This is based on the drugs recovered from Reed and Warren upon their arrests in January, 2012. The laboratory analysis on these drugs showed that the purity level between the Reed drugs and the Warren drugs was different (J.A. 670-671). Therefore, it is questionable whether they came from the same source and Lumpkin should not have been attributed with any of these drugs.

**v.**    Lumpkin should not have been attributed with 28.3445562 grams in ¶19 of the PSR (J.A. 1720). The only amount recovered when Lumpkin was arrested was 4 grams of suspected methamphetamine. There is no certificate of analysis on this substance. The remainder being attributed to Lumpkin is based on part of the money recovered from him and it was not established that this money was drug proceeds.

**vi.**        Lumpkin should only have been attributed with a total of 8 ½ ounces of a mixture of methamphetamine or 240.970665 grams.  Therefore, his base offense level should have been 28 not 32.

> **b.**    **The trial court erred in assessing a three-level enhancement for role in the offense under Guideline § 3B1.1(b).**

Lumpkin was not a manager or supervisor of a criminal activity that involved five or more participants as that term is defined in the Guidelines.  Under Guidelines § 3B1.1(b), a District Court may assess a three-level sentencing adjustment if the court makes specific findings that the defendant was a manager or supervisor and the criminal activity involved five or more participants or that was otherwise extensive.  Seven factors must be considered in deciding whether a role in the offense enhancement should be applied: *[1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others. United States v. Cameron*, 573 F.3d 179, 184 (4th Cir. 2009) citing U.S.S.G. B1.1 n. 4 and *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002).  A defendant should only be given an aggravating role enhancement if he "controlled the activities of other participants." *United States v. Bartley*, 230 F.3d 667, 673 (4th Cir. 2000).  The Court must ascertain Lumpkin's

49

role in the offense.   Lumpkin did not become involved in the conspiracy until late 2010 or sometime in 2011.

At trial, the evidence was that this was an ongoing conspiracy which began 5 to 6 years before Lumpkin was involved.  The evidence showed that most of the co-conspirators either did not know Lumpkin or had very little contact with him or knowledge of him.  The only witness that testified that Lumpkin directed him in any way was Jason Warren (J.A. 835-839).  Warren was involved in the conspiracy well before meeting Lumpkin and was acting on his own without direction from Lumpkin (J.A. 976-977).  Warren, Peralta and Roy Smith (who had previously lived in Virginia) had an on-going interstate trade prior to Lumpkin becoming involved (J.A. 830-835).  It is clear that Warren saw Lumpkin as a means to an end.  When he realized that Lumpkin's mother resided in Virginia, he seized the opportunity to utilize Lumpkin.  Roberta Stegall knew Warren and Peralta before she met Lumpkin, she was from Virginia, and had an extensive network of methamphetamine contacts in Virginia.  Ron Reid and others in Virginia had little or no contact with Lumpkin or did not even know him. Lumpkin was not a manager or supervisor and should not be given an enhancement for an aggravating role in the offense.  As such, the District Court clearly erred in applying the enhancement in this case.

#### c.     The trial court erred in assessing a two-level enhancement under Guideline § 3C1.1 for obstruction.

U.S.S.G. § 3C1.1 states "If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by **2** levels." In ¶ 24 of the PSR the probation officer applied this enhancement because "The defendant committed perjury when he testified falsely at trial." (J.A. 1721)  An obstruction enhancement "does not apply automatically every time a criminal defendant who testifies at trial is convicted." "[T]he government cannot secure a sentencing enhancement on the grounds of perjury unless it proves each of the elements by a preponderance of the evidence." *United States v. Smith*, 62 F.3d 641, 646-47 (4th Cir. 1995).  At trial, Lumpkin took the stand and admitted his wrong doing.  Government Witness Warren testified that Lumpkin's involvement was much greater than it was in reality.  It is obvious that the jury did not believe Warren and believed Lumpkin when he said his involvement was much less.  Even one of Warren's co-conspirator's, Roy Smith, when asked about Warren's reputation for truthfulness and honesty, testified that "You can't believe a whole lot that comes from him." (J.A. 1143).  Smith had known and dealt with Warren for years.  Lumpkin should not have been given a 2

51

level enhancement for obstruction.  The District Court erred in applying this enhancement.

## **CONCLUSION**

For all the reasons set forth above, the Appellants, Thaddeus Vidal Peralta and Aaron Anthony Lumpkin, respectfully request that this Court GRANT this Appeal and vacate and dismiss all of the charges as to Appellant Peralta or in the alternative to remand to the District Court for sentencing proceedings consistent with this Court's opinion.  Appellant Lumpkin respectfully requests that this Court GRANT his Appeal with respect to the sentencing enhancements and the drug weight attributed to him and remand to the District Court for sentencing proceedings consistent with this Court's opinion.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Thaddeus Vidal Peralta, by counsel, asserts that the arguments contained in this Brief are complete and meritorious and do not require oral argument. However, if the Court should determine that oral argument would be helpful in weighing the merits of this appeal, Appellant would be glad to participate in such argument.

Appellant, Aaron Anthony Lumpkin, by counsel, asserts that the arguments contained in this Brief are complete and meritorious and do not require oral argument. However, if the Court should determine that oral argument would be helpful in weighing the merits of this appeal, Appellant would be glad to participate in such argument.

Respectfully submitted on this 18th day of July, 2014.

/s/ Nicholas D. Renninger
Nicholas D. Renninger
KOZAK, DAVIS & RENNINGER, PC
355 Crawford Street, Suite 700
Portsmouth, VA 23704
(757) 222-2224

*Counsel for Appellant Thaddeus Vidal Peralta*

/s/ Melinda R. Glaubke
Melinda R. Glaubke
SLIPOW ROBUSTO & KELLAM, PC
2476 Nimmo Parkway, Suite 121
Virginia Beach, VA 23434
(757) 427-5094

*Counsel for Appellant Aaron Anthony Lumpkin*

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

      this brief contains <u>11,833</u> words, excluding the parts of the brief
      exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      this brief has been prepared in a proportional spaced typeface using
      <u>Microsoft Word 2013</u> in <u>14 point Times New Roman</u>.

Dated:  July 18, 2014          /s/ Nicholas D. Renninger
                               Nicholas D. Renninger

                               *Counsel for Appellant*
                                *Thaddeus Vidal Peralta*

                               /s/ Melinda R. Glaubke
                               Melinda R. Glaubke

                               *Counsel for Appellant*
                                *Aaron Anthony Lumpkin*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on July 18, 2014, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Darryl J. Mitchell
OFFICE OF THE
  UNITED STATES ATTORNEY
8000 World Trade Center
101 West Main Street
Suite 8000
Norfolk, VA 23510
(757) 441-6331

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA 23219